| | | |
|---|---|---|
| WEST AMERICAN INSURANCE COMPANY, | ) ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM and ORDER |
| | ) | |
| TERRA DESIGNS, INC., | ) | |
| MARY NIXON PITTMAN, | ) | |
| Administratrix of the ESTATE of | ) | |
| HENRY H. PITTMAN, JR., and | ) | |
| ARGONAUT MIDWEST INSURANCE | ) | |
| CO., | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Plaintiff West American Insurance Company's

Motion for Summary Judgment (Doc. 24), as well as Defendants Argonaut Midwest Insurance

Company and Mary Pittman's Cross-Motions for Summary Judgment[1] (Docs. 22, 23), pursuant

to Rule 56 of the Federal Rules of Civil Procedure.

## I. PROCEDURAL AND FACTUAL HISTORY

This matter arises out of a dispute over the applicability of uninsured/underinsured

motorist coverage ("UIM")[2] following the death of Henry Herman Pittman Jr. ("Pittman"), on

November 29, 2009 in Alexander County, North Carolina.  On November 29, 2009, at 2:00 a.m.,

Pittman was struck and killed by a 1999 Saturn automobile driven by Donna Farmer ("Farmer")

---

[1] Mary Pittman did not file a separate Memorandum in support of the Estate's Motion for Summary Judgment. Instead, Mary Pittman adopts the arguments set forth in Argonaut's Memorandum, and does not intend to make any additional arguments.

[2] Uninsured or underinsured motorist coverage seeks to protect the insured from "injuries caused by the negligence of other drivers who may have limited or only minimum coverage or even no liability insurance."  (Doc. 1 / Exh. 1, 23).  In this case, the alleged negligent motorist is underinsured because her liability limit is $50,000.  (Pl.'s Am. Compl., ¶ 20).

as he stood near his vehicle, a 1993 Ford F Super Duty truck ("1993 Ford"), Vehicle Identification Number 2FDLF47M7PCA81377. (Doc. 13 / Pl.'s Am. Compl., ¶ 17). Reportedly, Pittman "was working on a jobsite near the roadway" and was "standing in the roadway" at the time of the accident. (Pl.'s Am. Compl., ¶ 17; Doc. 21 − 3/2/2012 Stipulations, ¶ 4) ("Stipulation"). Pittman, formerly a sole proprietor / independent contractor, performed work for Terra Designs, Inc. ("Terra Designs"), a Charter cable contractor. Pittman purchased the subject vehicle, the 1993 Ford, from Terra Designs on April 2, 2008.[3] (Pl.'s Am. Compl., ¶ 11).

Prior to the April 2008 sale of the 1993 Ford to the decedent, Terra Designs insured the 1993 Ford on its Business Automobile policy through West American Insurance Company ("West American"), policy number BAW (10) 52 30 14 85. (Pl.'s Am. Compl., ¶ 10). Terra Designs included the 1993 Ford as one of many (up to nineteen) scheduled autos on its West American policy. (Pl.'s Am. Compl., ¶ 10). Terra Designs did not inform West American of the sale to Pittman in 2008, nor did it remove the truck from its West American policy. (Pl.'s Am. Compl., ¶ 12). In fact, Terra Designs' policy with West American renewed on November 19, 2008, and again on November 19, 2009. (Pl.'s Am. Compl., Exh. 2 and ¶¶ 15, 16). For reasons unknown, the 1993 Ford remained on Terra Designs' West American policy some nineteen months after the sale to Pittman.

As a sole proprietor, Pittman was insured by a Business Automobile policy issued through Argonaut Midwest Insurance Company ("Argonaut"). (Pl.'s Am. Compl., ¶ 13). In April 2008, the 1993 Ford was added as a scheduled auto under Pittman's Argonaut policy. Pittman also carried personal automobile insurance coverage through GMAC Insurance, a non-party to this lawsuit. (Pl.'s Am. Compl., ¶ 14).

---

[3] Terra Designs originally purchased the 1993 Ford approximately nine years earlier, on April 17, 1999. (Pl.'s Am. Compl., ¶ 9).

On April 5, 2011, the Administratrix of Pittman's Estate (the "Estate"), Mary Nixon Pittman ("Ms. Pittman"), filed a wrongful death action against the other driver, Donna Farmer, that is pending in the North Carolina General Court of Justice, District Court Division of Wilkes County, North Carolina.[4]  (Pl.'s Am. Compl., ¶¶ 3, 22).  The wrongful death action brought by Ms. Pittman is stayed by consent of the parties pending resolution of the coverage matter presently before this Court.

Ms. Pittman has also presented a wrongful death insurance claim requesting UIM benefits from West American, Argonaut, and GMAC, which precipitated the instant declaratory judgment action.  (Pl.'s Am. Compl., ¶ 19).  Potentially, both the West American and Argonaut Business Automobile policies provide UIM benefits up to $1,000,000 to the Pittman Estate for the 1993 Ford.

West American initiated these proceedings with its June 9, 2011 Complaint for Declaratory Judgment, 28 U.S.C. § 2201. (Pl.'s Am. Compl., ¶ 8).  Defendant Argonaut answered West American's Complaint on September 21, 2011.  (Doc. 14).  Defendant Mary Pittman answered on September 23, 2011.  (Doc. 16).  Defendant Terra Designs did not file an Answer.  Upon West American's Motion for Entry of Default, and pursuant to Fed. R. Civ. P. 55(a), Entry of Default by Terra Designs was docketed by the Clerk on November 17, 2011.[5] (Doc. 18).

---

[4]  *See Mary Nixon Pittman, Individually and as Administratrix of the Estate of Henry Herman Pittman, Jr. v. Donna Smith Farmer (11-CVD-449)*. It is unclear to the Court why the underlying wrongful death action was brought by Ms. Pittman in the District Court Division of Wilkes County rather than the Superior Court.  (Pl.'s Am. Compl., ¶ 22).

[5]  Default judgment is distinct from entry of default.  *See* Fed. R. Civ. P. 55(a) and (b).  The parties erroneously represent in their Stipulation that "A default judgment has been entered against Defendant Terra Designs, Inc."  (Stipulation, ¶ 8).  To date, West American has not moved for default judgment.

Both insurance companies and Ms. Pittman now move for summary judgment on the UIM coverage issue. Pursuant to Stipulations filed March 2, 2012, the parties agree that Pittman acquired legal title of the truck in April 2008 and that the truck was legally titled in the decedent's name at the time of the accident. (Stipulation, Exh. 1 and ¶ 5). It is undisputed that Terra Designs was the named insured on the West American policy − not the decedent. Likewise, the parties stipulate that the West American and Argonaut policies were both in effect on the date of the accident.[6] (Stipulation ¶¶ 6−7). West American contends that its policy provides no UIM coverage because Terra Designs no longer had any ownership interest in the truck.[7] Argonaut contends that West American's "reliance on titled possession as grounds for denying coverage is misplaced." (Def.'s Mem. In Supp., 1−2.) Although Argonaut concedes its own risk for UIM coverage, it argues that West American's policy provides UIM coverage subject to pro-rata sharing with Argonaut. (Def.'s Mem. In Supp., 1). Argonaut has not tendered its UIM coverage to the Estate and neither has GMAC. (Pl.'s Am. Compl., ¶ 21). Farm Bureau, Donna Farmer's insurer, has tendered $50,000 (the liability limit under Farmer's policy) to the Estate. (Pl.'s Am. Compl., ¶ 20).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the initial responsibility of informing the district court of the basis for its motion and identifying those particular portions of the record before the Court that the movant

---

[6] Presumably, all insurance premiums were paid and current.

[7] West American's Second Claim for Declaratory Relief asserts that Pittman was not "occupying" the 1993 Ford truck at the time of the accident. (Pl.'s Am. Compl., 5−6). West American does not wish to present this issue to the Court at this time but reserves the right to raise it later. (Pl.'s Mem. In Supp., 3; Stipulation, ¶ 10).

believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In the event this burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3. Thus, the nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id.* at 324. Rather, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a motion for summary judgment, the Court must view the evidence and any reasonable inferences arising therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Nevertheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 129 S.Ct. 2658, 2677 (2009) (quoting *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Ordinarily, in resolving cross-motions for summary judgment, the Court must consider each motion separately and employ the familiar Rule 56 standard. *See e.g., Ga. Pac. Consumer Prods., L.P. v. Von Drehle Corp.*, 618 F.3d 441, 445 (4th Cir. 2010). Here, since there are no facts to be decided, no inferences to be draw from the stipulated facts, and the issues presented are purely legal questions, it is not necessary to consider the motions separately.[8]

---

[8] Within their Stipulations, the parties represent that they have agreed to those facts necessary for the Court's determination of summary judgment on the issue of whether West American's policy provides UIM coverage for this loss.

**III. DISCUSSION**

As framed by the parties' Stipulation, the legal issues for the Court are as follows:

A) Does the Hired Autos Endorsement (CA 99 16 12 9) render Henry Pittman's 1993 Ford an "owned" vehicle under the West American policy.

B) Does N.C.G.S. § 20-279.21(b) require the provision of $1,000,000 in underinsured motorist coverage on Henry Pittman's 1993 Ford.

The crux of West American's declaratory judgment action is that UIM coverage "ceased to exist on the [1993 Ford] under the West American policy the moment that the title to the 1993 Ford was legally transferred to Pittman." (Pl.'s Mem. In Supp., 4). While Argonaut stipulates that the Ford truck was legally titled in decedent Pittman's name, Argonaut contends that the West American policy provides a more expansive definition of "ownership," in part due to the Hired Autos Endorsement (CA 99 16 12 93). (Doc. 22 / Def.'s Motion, 1−2).

The principles of contract construction and the relevant provisions of the West American policy provide the starting point for the Court's analysis.

**A.     The Hired Autos Endorsement (CA 99 16 12 93) Is Unambiguous And Does Not Apply To Pittman's 1993 Ford**

**1.   Principles of Contract Construction[9]**

"Only an unambiguous writing justifies summary judgment without resort to extrinsic evidence, and no writing is unambiguous if "susceptible of two reasonable interpretations."" *World-Wide Rights Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 245 (4th Cir. 1992) (recognizing contract interpretation as a conceptually difficult task when analyzing under summary judgment standard) (internal citation omitted). "The first step for a court asked to grant summary judgment based on a contract's interpretation is, therefore, to determine whether, as a matter of law, the

_____

[9] The parties agree that North Carolina substantive law applies.

contract is ambiguous or unambiguous on its face." *World-Wide Rights Ltd. P'ship*, 955 F.2d at 245. "No ambiguity . . . exists unless, in the opinion of the court, the language of the policy is ***fairly and reasonably susceptible to [multiple] . . . constructions***." *Penn. Nat. Mut. Ins. Co. v. Strickland*, 631 S.E.2d 845, 847 (N.C. App. 2006) (internal citations omitted) (emphasis added).

"If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue." *World-Wide Rights Ltd. P'ship*, 955 F.2d at 245. "Even where a court, however, determines as a matter of law that the contract is ambiguous, it may yet examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if that evidence is, as a matter of law, dispositive of the interpretive issue, grant summary judgment on that basis." *World-Wide Rights Ltd. P'ship*, 955 F.2d at 245 (citing *Jaftex Corp. v. Aetna Cas. and Surety Co.*, 617 F.2d 1062, 1063 (4th Cir. 1980)). "If, however, resort to extrinsic evidence in the summary judgment materials leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact." *Id.*

Finally, "each provision of an insurance contract must be interpreted in view of the whole contract and not in isolation." *Penn. Nat.*, 631 S.E.2d at 847 (citing *DeMent v. Nationwide Mut. Ins. Co.*, 544 S.E.2d 797, 800 (N.C. App. 2001) ("[T]he courts should resist piecemeal constructions and should, instead, examine each provision in the context of the policy as a whole.")).

## 2. "Ownership" As Defined By The West American Policy Is A Prerequisite For UIM Coverage

The Court first considers whether the West American policy is ambiguous as alleged by Defendants. *See World-Wide Rights Ltd. P'ship*, 955 F.2d at 245.

Under the West American Policy, UIM coverage is limited to vehicles that fall under Symbol "2" designation <u>and</u> are "owned" by the Named Insured − Terra Designs.[10]  Within the Business Automobile "Common Policy Declarations" ("Declarations"), "ITEM TWO: SCHEDULE OF COVERAGES AND COVERED AUTOS," the policy states that UIM coverage is limited to "Covered Auto Symbol(s) 02." (Stipulation, Exh. 2, 5).  The policy then refers to Covered Auto Symbol Descriptions, found at Business Auto Coverage Form (CA 00 01).  Id.  Under "SECTION I-COVERED AUTOS" of the Business Auto Coverage Form, the policy states:

> ITEM TWO of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos." ***The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos."***

(Stipulation, Exh. 2, 26) (emphasis added).  Within the "Description Of Covered Auto Designation Symbols" Chart, each of the nine numerical symbols are listed and described. Relevant here is the description for Covered Auto Symbol 2, which states that coverage categories marked with Symbol 2 are applicable to ***"Owned 'Autos' Only" or "Only those 'autos' you own."*** Id. (emphasis added).  Therefore, UIM coverage on Terra Designs' West American policy only exists for vehicles that Terra Designs "owned." (Pl.'s Mem. In Supp., 6).

---

[10]  Under the West American policy, "the words "you" and "yours" refer to the Named Insured shown in the Declarations."  (Stipulation, Exh. 2, 26).

The word "own" is not defined in the policy. (*See* Stipulation, Exh. 2, SECTION V-DEFINITIONS, 36−38).

In North Carolina, it is well established that actual ownership of a vehicle is determined by possession of legal title.[11] *See* N.C. GEN. STAT. § 20-4.01(26) (defining the "owner" of a vehicle as "a person holding the legal title to a vehicle . . . ."); *Jenkins v. Aetna Cas. and Surety Co.*, 378 S.E.2d 773, 775−76 (N.C. 1989). The Court finds *Pennsylvania National Mutual Insurance Company v. Strickland* instructive. 631 S.E.2d 845 (N.C. App. 2006). In *Pennsylvania National*, the North Carolina Court of Appeals found that no UIM coverage was available to the uninsured shareholder of the two corporate insured entities under a Business Automobile policy where the car driven was not registered in the name of (or owned by) either insured. 631 S.E.2d at 846−47. Consistent with the West American policy, the *Pennsylvania National* policy contained the same Symbol "2" limitation on UIM coverage, yet qualified coverage such that coverage was available "only for those autos you own." Id. The court determined that the Symbol "2" designation for UIM coverage only existed for vehicles "owned" by the named insured. Id. Therefore, coverage was limited to those vehicles *actually owned* by the named insured. Id. (citing *Sproles v. Green*, 407 S.E.2d 497 (N.C. 1991) (because plaintiff insured did not own the vehicle in which the claimant was riding, there was no available UIM coverage)). The court denied UIM coverage despite the vehicle being listed on the schedule of covered autos on the Business Automobile policy, and despite the shareholder's payment of premiums for that vehicle.[12] Id. at 847 ("We agree with plaintiff that payment of a premium is

---

[11] There is no claim in the instant case that Terra Designs retained any form of equitable title to the 1993 Ford.

[12] Likewise, the payment of premiums by Terra Designs (likely the result of the 1993 Ford's inadvertent inclusion upon renewal of the policy) does not change the Court's analysis.

not determinative of coverage; rather, the language of the insurance contract controls the court's interpretation of the intention of the parties to the contract.") (internal citations omitted). Moreover, the court rejected the claim that the listing of the vehicle on the schedule of covered autos created an ambiguity in the policy, explaining:

> "After reviewing the entire insurance contract, the listing of the [vehicle] as a covered auto does not contradict the *clear and unambiguous language* stating that numerical symbol "2" covered autos are only those vehicles owned by the named insured . . . ."

Id.[13]

Likewise, the West American policy in dispute here is clear and unambiguous. *See Pennsylvania Nat'l Mut. Ins. Co.*, 631 S.E.2d at 847 (parties' mere disagreement over language of insurance contract and its meaning does not create ambiguity). As discussed, the West American policy states that UIM coverage is only available to Symbol "2" Covered Autos you (or the Named Insured) own. The policy terms expressly state that no UIM coverage will be provided for vehicles not *actually owned* by Terra Designs. Indeed, if in effect / applicable, the West American policy plainly states that the 1993 Ford carries UIM coverage subject to certain conditions (including ownership). Since Terra Designs, the Named Insured, did not *actually own* the 1993 Ford at the time of the accident, there is no UIM coverage for Pittman's Estate to claim *absent another policy provision invoking UIM coverage for the 1993 Ford*.

According to Defendants, Endorsement (CA 99 16 12 9) titled "Hired Autos Specified As Covered Autos You Own" ("Hired Autos Endorsement") renders the 1993 Ford an "auto you

---

[13] Defendants do not dispute that the rationale and holding in *Pennsylvania National* is good law. Rather, Defendants argue *Pennsylvania National* does not control in light of differences in the policy language and recent amendments to North Carolina's Motor Vehicle Safety and Financial Responsibility Act. (Defs.' Mem. In Supp. 4–6). The differences in the policy language are *de minimis* and the North Carolina statutory scheme is discussed, *supra*, in Section "B."

own" for purposes of the West American policy.[14] (Stipulation, Exh. B, 65). The Court next considers whether the Hired Autos Endorsement effectively brings the 1993 Ford within West American's definition of "covered" or "owned" autos. Defendants argue, at minimum, the endorsement creates ambiguity that should be construed in favor Defendants.[15] *See generally, Trust Co. v. Ins. Co.*, 172 S.E.2d 518, 522 (N.C. 1970) (any ambiguity within an insurance policy is construed against the insurer); *Brown v. Lumbermens Mut. Cas. Co.*, 390 S.E.2d 150, 153 (N.C. 1990) (same).

As an initial matter, the purpose of the Hired Autos Endorsement is to permit (as opposed to guarantee) modification to the insurance provided under a given type of policy.[16] After listing the various types of Coverage Forms (i.e., "Business Auto Coverage Form") that could be implicated by the endorsement, it explains:

> "With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply *unless modified by the endorsement*."

Id. (emphasis added). In other words, the existence of the Hired Autos Endorsement, standing alone, does not trigger modification to the particular Coverage Form. Id.

On its face, the Hired Autos Endorsement does not apply to the decedent's 1993 Ford. The endorsement contemplates this additional coverage may apply in two ways under the policy: 1) by expanding the category of covered autos "owned"; or 2) by enlarging the definition of

---

[14] In the Description of Covered Auto Designation Symbols Chart, "Hired Autos" are defined as "Only those "autos" you lease, hire, rent or borrow . . . ."

[15] "Doubts must be resolved against the insurance company where the meaning of words or provisions is uncertain, and if no definition is given, non-technical words must be given their meaning in ordinary speech." *Id.* However, where a policy defines a term, that definition is to be used. *Woods v. Nationwide Mut. Ins. Co.,* 246 S.E.2d 773, 777 (N.C. 1978); see also *C.D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co.*, 388 S.E.2d 557, 563 (N.C. 1990).

[16] At the very top of the one-page document, the Hired Autos Endorsement states: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." Id. Under the title, it reads, "[t]his endorsement modifies insurance provided . . . ." Id.

"who is an insured."  Defendants only rely on coverage pursuant to Section "A," which deals

with ownership.  (Defs.' Mem. In Supp., 6−7).  If applicable, Section "A" provides:

> "Any 'auto' described in ***the Schedule*** will be considered a covered 'auto' you
> own and not a covered 'auto' you hire, borrow, or lease under the coverage for
> which it is a covered 'auto.'"

Id.  In other words, a Hired Auto will be treated as one that is owned.

As referenced in Section "A", there is a "SCHEDULE" on the Hired Autos Endorsement

to provide for the identification and description of any auto that is to benefit from the

endorsement's additional coverage.  In this instance, the SCHEDULE is blank.[17]  In fact, there is

no entry for any Terra Designs' scheduled vehicle.

Hired Autos, as a category of coverage, are addressed in several places within the West

American policy.  (Stipulation, Exh. 2, 17, 26, 65).  In addition to the Hired Autos Endorsement,

"ITEM FOUR: HIRED AUTO COVERAGE," within the Declarations of the policy, provides

for the insured to identify the costs associated with carrying this type of liability coverage.

(Stipulation, Exh. 1, 17).  In the first column, "Estimated Annual Cost of Hire,"[18] the only entry

is "If Any."  Id.  Again, Terra Designs does not designate any of its scheduled vehicles as Hired

Autos or any associated costs for liability coverage for Hired Autos in ITEM FOUR.

---

[17] The Schedule appears as follows:

**SCHEDULE**

**Description of Auto:**

(If no entry appears above, information required to complete this endorsement will be
shown in the Declarations as applicable to this particular endorsement.)

[18] "Cost of Hire means the total amount you incur for the hire of "autos" you don't own (not
including "autos" you borrow or rent . . . .). Cost of hire does not include charges for services performed
by motor carriers of property or passengers."  (Stipulation, Exh. 2, 17).

Defendants contend that the absence of the 1993 Ford within the SCHEDULE is not determinative because the Hired Autos Endorsement refers back to the Declarations and necessarily encompasses the decedent's truck. (Defs.' Mem. In Supp., 7). However, if the Hired Autos Endorsement is construed as Defendants suggest, any vehicle listed on the Declarations in "ITEM TWO: SCHEDULE OF COVERAGE AND COVERED AUTOS," would be deemed a "Covered 'auto' you own" pursuant to this endorsement.[19] West American minimizes the endorsement's reference to the Declarations by arguing that if there is no entry above, "then the insured should refer to the Declarations page *for further instructions*." (Pl.'s Mem. In Supp., 10). The Court considers the parties' proposed interpretations equally flawed.

Nonetheless, in the Court's view, the Hired Autos Endorsement is not fairly and reasonably subject to more than one interpretation. The Hired Autos Endorsement makes clear that any vehicle that is to be included must be expressly "specified" as such, whether via the endorsement itself or in the Declarations.[20] The Hired Autos Endorsement "SCHEDULE," reads,

> "If no entry appears ***above***, information required to complete this endorsement will be shown in the Declarations ***as applicable to this particular endorsement***."

Id. (emphases added). Next, the Court observes that the only reasonable construction permitted is that the Hired Autos Endorsement refers to its own SCHEDULE given Section "A"'s reference to a single schedule ("***the*** schedule") and the subsequent reference to the entry "above." The Court construes this provision to mean that *if* the 1993 Ford is to be brought within the Hired Autos Endorsement, *then* one of two things must happen: 1) either the 1993

---

[19] According to West American, Defendants' construction would render Symbols "1" through "9" meaningless as well as ITEM FOUR: HIRED AUTO COVERAGE.

[20] The endorsement caption is "Hired Autos ***Specified*** As Covered Autos You Own."

Ford is listed on the Hired Autos Endorsement Schedule; or 2) somewhere within the Declarations[21], an explicit reference to the Hired Autos Endorsement and the 1993 Ford falling within the same exists. Neither has been done here for the 1993 Ford. In short, there are no "Hired Autos" identified by Terra Designs anywhere within the West American policy.

The Court finds as a matter of law that in November 2009 the 1993 Ford was not "owned" by the Named Insured Terra Designs, and likewise was not specified as a "hired auto" entitled to treatment as if "owned" pursuant to the Hired Auto Endorsement. Therefore, the 1993 Ford was not a covered auto for purposes of UIM coverage as defined by the West American policy.

> **B. The NC Motor Vehicle Safety and Financial Responsibility Act, N.C. GEN. STAT. § 20-279.21, Does Not Impute UIM Coverage Equal To Bodily Injury Liability Coverage For The Decedent's 1993 Ford Because The Terra Designs' West American Policy Is "Applicable Solely To Fleet Vehicles"**

Next, the Court considers whether the North Carolina Motor Vehicle Safety and Financial Responsibility Act (the "Act"), N.C. GEN. STAT. § 20-279.21, mandates that West American provide UIM coverage to the Pittman Estate for the 1993 Ford. According to West American, even if the Terra Designs' West American policy falls under the Act, policies obtained solely for fleet vehicles are expressly exempt from the compulsory UIM benefit.

The North Carolina Motor Vehicle Safety and Financial Responsibility Act is the principal North Carolina statute governing compulsory motor vehicle insurance laws. The stated purpose of the Act is "the protection of innocent victims who may be injured by financially irresponsible motorists." *Proctor v. N.C. Farm Bureau Mut. Ins. Co.*, 376 S.E.2d 761, 763 (N.C.

---

[21] There is no indication within Section "A" of the Hired Autos Endorsement that the endorsement's SCHEDULE is referencing the main policy Declarations in ITEM TWO as opposed to ITEM FOUR (which specifically deals with premiums for Hired Auto coverage) or any other part of the Declarations.

1989); *Sutton v. Aetna Cas. & Surety Co.,* 382 S.E.2d 759, 764 (N.C. 1989); *see also Jones v. Pennsylvania Nat'l Ins. Co.*, 835 F.Supp.2d 89, 92 n. 2 (W.D.N.C. 2011) (internal citation omitted). "The provisions of [§ 20-279.21] are deemed to be a part of every automobile insurance policy written in North Carolina and control over contrary provisions contained in such policies." *Wood v. Nunnery*, 730 S.E.2d 222, 225 (N.C. App. 2012) (citing *Corbett v. Smith*, 507 S.E.2d 303, 304 (N.C. App. 1998)); *Sutton*, 382 S.E.2d at 762 (internal citations omitted) (same). Concerning construction and application, the North Carolina Supreme Court has emphasized that:

> The Act is remedial in nature and is to be liberally construed so that the beneficial purpose intended by its enactment may be accomplished. The purpose of the Act, we have said, is best served when every provision of the Act is interpreted to provide the innocent victim with the fullest possible protection.

*Benton v. Hanford,* 671 S.E.2d 31, 34 (N.C. App. 2009) (quoting *Liberty Mut. Ins. Co. v. Pennington*, 573 S.E.2d 118, 120 (N.C. 2002) (citations, quotation marks, ellipses and brackets omitted)).

Effective January 1, 2009, the North Carolina Act requires UIM coverage at limits equal to or greater than the limit of the Bodily Injury Liability coverage provided by the same policy. Specifically, Section 20-279.21(b)(3) was amended as follows:

> No policy of bodily injury liability insurance, covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto, under provisions filed with and approved by the Commissioner of Insurance, *for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles* . . . because of bodily injury . . . including death, resulting therefrom, *with limits equal to the highest limits of bodily injury liability coverage for any one vehicle insured under the policy*.

N. C. GEN. STAT. § 20-279.21(b)(3)(2010) (emphasis provided).

The subsection governing underinsured coverage provides that any such motor vehicle policy:

> Shall, in addition to the coverages set forth in subdivisions (2) and (3) of this subsection, provide ***underinsured*** motorist coverage, to be used only with a policy that is written at limits that exceed those prescribed by subdivision (2) of this section, ***with limits equal to the highest limits of bodily injury liability coverage for any one vehicle insured under the policy***.

N. C. GEN. STAT. § 20-279.21(b)(4)(emphases added).

With respect to statutorily mandated underinsured motorist coverage, the 2009 amendments also carve out an exception for policies "applicable solely to fleet vehicles." N.C. GEN. STAT. § 20-279.21(b)(4). More specifically:

> Notwithstanding the provisions of this subsection, ***no policy of motor vehicle liability insurance . . . applicable solely to fleet vehicles shall be required to provide underinsured motorist coverage.***

N.C. GEN. STAT. § 20-279.21(b)(4).[22]  The statute further provides that in seeking to determine whether the policy is applicable solely to fleet vehicles, "the insurer may rely upon the number of vehicles reported by the insured at the time of the issuance of the policy for the policy term in question." Id. The same is true with a renewal policy. Id.

The Terra Designs' West American renewal policy is subject to the Act by operation of law. Under the Act, UIM coverage depends in part on Bodily Injury Liability coverage. The parties agree that Bodily Injury Liability is available to the 1993 Ford under the West American policy despite the fact that Terra Designs did not actually own the vehicle. Under § 20-279.21(b), Bodily Injury Liability coverage is available for "liability arising out of the state of ownership, maintenance, or use of any motor vehicle . . . ." N.C. GEN. STAT. § 20-279.21(b)(3). Similarly,

---

[22] West American cites the above language from § 20-279.21(b)(4) in support of its "fleet exception" argument. The identical exception is found in Subsection 20-279.21(b)(3), the provision for uninsured motorist coverage.

Bodily Injury Liability coverage under the West American policy is assigned "Covered Auto Symbol(s) 01, which is available to "Any 'Auto'".[23] (Stipulation, Exh. 2, 5, 26). Terra Designs renewed its West American policy, the 1993 Ford included, on November 19, 2009. Pittman was hit and killed on November 29, 2009. Since Bodily Injury Liability coverage in the amount of $1,000,000 existed for the 1993 Ford under the West American policy, Defendants are correct that the 2009 Amendment to the Act deems the 1993 Ford eligible for at least $1,000,000 in UIM benefits. The statutory mandate for UIM coverage applies notwithstanding the policy terms and West American's criteria for UIM coverage. *See Wood*, 730 S.E.2d at 225; *Sutton*, 382 S.E.2d at 762.

Nonetheless, West American is correct in asserting that Terra Designs' Business Automobile policy is "applicable solely to fleet vehicles." "[A] fleet policy is a single policy designed to provide coverage for a multiple and changing number of motor vehicles used in an insured's business." *Sutton,* 382 S.E.2d at 764 (internal citations omitted); *see also* N.C. GEN. STAT. § 58-40-10 (a "nonfleet" vehicle means the named insured owns four or fewer vehicles); *Hlasnick v. Federated Mut. Ins. Co.*, 524 S.E.2d 386, 389, *aff'd in part on other grounds and disc. review improvidently allowed in part*, 539 S.E.2d 274 (N.C. App. 2000) (policy insured more than four vehicles and is a fleet policy). In this case, the Terra Designs' policy is a Business Automobile policy. Terra Designs is the corporate Named Insured. The policy contains a schedule of covered vehicles, each purportedly used in operation of Terra Designs' business. Significantly, the schedule includes nineteen work trucks − well beyond the four vehicle benchmark discussed, *infra*.

---

[23] There is no ownership requirement for bodily injury liability as this coverage type is distinct from UIM coverage. If the decedent had been deemed liable for the bodily injury of another, West American would be obligated to provide Bodily Injury Liability coverage up to $1,000,000.

In 2009, Section 20-279.21(b)(4) was amended to include the "fleet exception" relied upon by West American. *See Great American Ins. Co. v. Freeman*, 665 S.E.2d 536, 537 n. 1 (N.C. App. 2008) (describing as "substantial[]" amendment to § 20-279.21 effective January 1, 2009 and policies issued or renewed on or after that date). The statutory text is plain and unambiguous − "no policy of motor vehicle liability insurance . . . applicable solely to fleet vehicles shall be required to provide underinsured motorist coverage." N.C. GEN. STAT. § 20-279.21(b)(4). Despite the avowed purpose of the statute, the legislature apparently made a decision to exclude fleet policies. The parties do not present any case law construing a post-2009 version of this provision of the Act.[24] Indeed, the Court's independent research did not reveal any decision questioning or adopting the fleet exception within § 20-279.21(b)(4). Here, the Court concludes that the fleet exception serves to shield West American from the risk of having to provide UIM coverage for the 1993 Ford.

---

[24] The parties' filings are of little help on this issue in that the memoranda do not adequately address the import or rationale behind the fleet exception and likewise fail to explain the exception within the context of the statute as a whole.

In *Great American Ins. Co. v. Freeman*, the court applied an earlier version of § 20-279.21(b)(4). Applying the 2007 version of the Act, the court expressly stated that "fleet policies do not fall within any of the exceptions to the Act." *Great American Ins. Co.*, 665 S.E.2d at 538 (noting statutory exceptions for certain types of policies are set forth within § 20-279.32). The Great American court then explained:

> Fleet policies . . . are required to provide UIM coverage in accordance with N.C. Gen. Stat. § 20-279.21(b)(4). As this Court explained in *Hlasnick*, N.C. Gen. Stat. § 20-279.21(b)(4) sets the "floor" for UIM coverage that insurers must provide − ***necessarily including fleet policies*** − although the insured has the freedom to reject all UIM coverage or to select different coverage limits so long as the limits meet the statutory minimum.

665 S.E.2d at 539 (citing *Hlasnick*, 524 S.E.2d at 389) (emphases added). While analyzing the availability of UIM coverage, Great American dealt more specifically with the mechanisms available to the insurer in obtaining a selection or a rejection of UIM coverage from the insured under the Act. *Great American Ins. Co.*, 665 S.E.2d at 538−40. The appellate court held that the fleet policy was <u>not</u> exempt from any statutory requirement under the Act, including the statutory requirement that Great American had the burden to obtain a rejection or selection of policy limits for UIM coverage from its insured. *Great American Ins. Co.*, 665 S.E.2d at 540−41. Because Great American failed to meet its burden of proving that the insured selected different UIM coverage, and because the record evidence did not support any inference to that end, § 20-279.21(b)(4) mandated that Great American provide the statutory minimum for UIM coverage ($1,000,000). *Great American Ins. Co.*, 665 S.E.2d at 541. Of course, Great American is not controlling because it was decided before the 2009 amendment.

In addition to their statutory argument, Defendants contend that the Notice given to Terra Designs concerning the change in North Carolina law altered the policy terms. West American argues that the Notice was provided to Terra Designs in letter form only and was not made a part of the actual policy (not an amendment or endorsement). Consistent with the January 2009 amendment to § 20-279.21(b), West American provided Terra Designs with the following Notice, entitled "CHANGES IN YOUR UNINSURED/UNDERINSURED MOTORISTS COVERAGE–NORTH CAROLINA":

- The new law becomes effective January 1, 2009 and applies to policies issued or renewed on or after that date.

- All Commercial Motor Vehicle policies have to provide Uninsured/Underinsured Motorists Coverage with limits equal to the highest limits of Bodily Injury Liability Coverage for any one vehicle insured under the policy.

- No Uninsured/Underinsured Motorist Coverage shall be lower than the limit of Bodily Injury Liability Limits on the policy. If your policy previously contained limits of Uninsured/Underinsured Motorist Coverage lower than that of your Bodily Injury Liability Limits, we have increased your Uninsured/Underinsured Motorist Limits to equal your current Bodily Injury Liability Coverage with this renewal.

- There will no longer be an option to reject Uninsured/Underinsured Motorist Coverage. If you have rejected Uninsured/Underinsured Motorist Coverage and your policy does not show you have Uninsured/Underinsured Motorist Coverage on your policy, we have added Uninsured/Underinsured Motorist Coverage to your automobile policy at limits equal to your current Bodily Injury Liability Coverage with this renewal.

(Stipulation, Exh. 2, 23). The Notice sufficiently summarizes the impact of the amendments to the Act and appears to satisfy the directive that "[e]very insurer that sells motor vehicle liability policies subject to the requirements of subdivisions (b)(3) and (b)(4) of this section shall, when issuing and renewing a policy, give reasonable notice to the named insured" of the changes in the

law.  N.C. Gᴇɴ. Sᴛᴀᴛ. § 20-279.21(m)(1) − (5).  In light of the fact that the Act's amendments are deemed to write statutory terms into all insurance policies issued and renewed in North Carolina after January 1, 2009, the Notice and disclaimer is tangential, if not irrelevant, to the current discussion.[25]  As for Defendants' contention that West American modified the terms of the Business Automobile policy via the Notice, and provided more coverage than was otherwise required by statute, the undersigned is not persuaded that the Notice was intended to supersede the fleet exception that governs here.[26]

In conclusion, the Court finds as a matter of law that pursuant to § 20-279.21(b), the Terra Designs' West American policy is, in fact, a motor vehicle liability insurance policy "applicable solely to fleet vehicles" and thereby exempt from the compulsory requirement to provide UIM coverage for the 1993 Ford.  The Court further finds as a matter of law that the Notice summarizing changes in North Carolina law provided by West American to Terra Designs upon renewal of the policy in 2009 did not render the Act's fleet exception inapplicable.

### C. The UIM Coverage And Allocation Issue Between West American And Argonaut Business Automobile Policies Is Rendered Moot

Since it has been established by the Court that West American is not responsible for providing UIM coverage to the Defendants, the Court does not consider the parties' competing "other insurance" clauses and need not determine which insurance company provides primary or

---

[25]  West American points to a disclaimer found at the bottom of the Notice which reads:

"No coverage is provided by this policyholder notice; nor can it be construed to replace any provision of your policy. You should read your policy and review your declaration page for complete information on the coverages that you are provided. If there is a similar conflict between the policy and the summary above, the policy shall prevail."

(Stipulation, Exh. 2, 23).

[26] The Notice does not directly speak to fleet vehicle policies.

secondary coverage. West American's alternative argument − that any UIM benefit it may be responsible for is necessarily limited to any excess to the coverage provided by Argonaut − is rendered <u>moot</u>. Likewise, Argonaut's motion seeking pro-rata UIM coverage from West American is rendered <u>moot</u>. Coverage cannot be allocated on a pro-rata basis because both insurance policies do not cover the loss.

GMAC is not named as a party in this action and the decedent's GMAC personal automobile policy is not before this Court.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that summary judgment is **GRANTED** in favor of Plaintiff West American. **IT IS FURTHER ORDERED** that the summary judgment motions of the Defendants Argonaut Midwest Insurance Company and Mary Pittman as Administratrix of the Pittman Estate are **DENIED**.

Signed: March 30, 2014

Richard L. Voorhees
United States District Judge